# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 21-1272C
(Filed: July 6, 2022)

| | |
|---|---|
| **MATTHEW L.Y. OKUDA**, | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| **UNITED STATES**, | ) ) |
| *Defendant.* | ) ) ) |

Military Pay: Supplementation of the Administrative Record; Effect of Retroactive Promotions and Constructive Service on Officer Separation Board Eligibility

*William E. Cassara*, Cassara Law Office, Evans, GA, for plaintiff.  *Elizabeth A. Harvey*, Cassara Law Office, Evans, GA, Of Counsel.

*Joshua A. Mandlebaum*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington DC, for defendant. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Eric P. Bruskin*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington DC.  *Frederick Rudesheim*, Major, Judge Advocate General's Corps Litigation Attorney, U.S. Army Legal Services Agency, Fort Belvoir, VA, Of Counsel.

**OPINION AND ORDER**

***BONILLA, Judge.***

This military pay case arises from a series of retroactive promotions, the consequent constructive service, and resulting eligibility for and selection by a mandatory separation board.  Pending before the Court are: plaintiff's motion to supplement the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC); defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction under RCFC 12(b)(1) or, in the alternative, failure to state a claim upon which relief can be granted under RCFC 12(b)(6); and the parties' cross-motions for judgment on the administrative record pursuant to Rule 52.  For the reasons set forth below, plaintiff's motion to

supplement the administrative record is DENIED, defendant's motion to dismiss is DENIED, defendant's motion for judgment on the administrative record is GRANTED, and plaintiff's cross-motion for judgment on the administrative record is DENIED.

## BACKGROUND

### I. Military Service

On October 27, 1994, plaintiff Matthew L.Y. Okuda enlisted in the Army National Guard of New Mexico as a Private First Class (E3). AR 295–96, 414.[1] After 18 months of military service, on May 10, 1996, Mr. Okuda received an appointment as a Reserve Commissioned Officer and began serving as a Second Lieutenant (O-1) in the U.S. Army Reserve (USAR) under the Reserve Officer Training Corps (ROTC) Early Commissioning Program. *Id.* at 252–53, 283; *see id.* at 298–303. On August 19, 1996, Mr. Okuda was reassigned to the Army National Guard, to serve with the Field Artillery Branch in Wahiawa, Hawaii. *Id.* at 304.

Effective November 1, 1997, Mr. Okuda transferred to Honolulu, Hawaii, to serve as a Military Police (MP) Platoon Leader pending his completion of the MP Officer Basic Training Course. *See id.* at 311–12. In May 1998, after successfully completing the course, Mr. Okuda began his service as an MP Platoon Leader. *Id.* at 68, 256–57. Thereafter, from June 1, 1998 to July 16, 2001, Mr. Okuda served as an MP Platoon Leader in the Army National Guard. *Id.* at 72–73, 285–92. In the interim, effective December 4, 1998, Mr. Okuda was promoted to First Lieutenant (O-2). *Id.* at 12. His promotion was confirmed on February 9, 1999. *Id.* at 13, 273.

On July 16, 2001, Mr. Okuda transferred from the Army National Guard to the USAR and assigned to the 1101st Garrison Support Unit (GSU) in Honolulu, Hawaii. *Id.* at 72–73, 107. The Table of Organization and Equipment (TOE) for the 1101st USAR GSU, Section II – Personnel: PM Section & Law Enforcement Platoon (end date Oct. 2, 2001), authorized three commissioned officer positions–i.e., Provost Marshal (O-4); Operations Officer (O-3); and MP Platoon Leader (O-2)–and 26 enlisted personal (E-3 through E-7). *Id.* at 135. Mr. Okuda's Officer Evaluation Report (OER), Department of the Army (DA) Form 67-9, for the rating period July 16, 2001 to July 15, 2002, lists "Platoon Leader" as his "Principal Duty Title." *Id.* at 269. His OER for the next rating period (i.e., July 16, 2002 to February 9, 2003)[2] lists "Operations Officer" as Mr. Okuda's "Principal Duty Title." *Id.* at 278.

---

[1] "AR __" refers to the page(s) from the administrative record filed on November 1, 2021. ECF 15, 15-1–15-5.

[2] As noted below, on February 12, 2003, Mr. Okuda was ordered to active duty. *See id.* at 41, 99.

2

The substantive evaluations in both OERs, however, nearly identically describe Mr. Okuda's military service and responsibilities as that of an MP Platoon Leader. *Compare id.* at 269–70 *with id.* at 278–79.

Mr. Okuda's Personnel Qualification Record (PQR) (Commissioned Officer), DA Form 2B (USAR), in contrast, reflects a position title of Operations Officer (O-3) with an assignment date of July 16, 2001. *Id.* at 127–28. Similarly, Mr. Okuda's PQR, DA Form 2-1, Section VII (Current and Previous Assignments), lists July 17, 2001, as the effective date of Mr. Okuda's service as "MP Operations Officer (USAR-READY)." *Id.* at 132. Unlike the OERs—which are completed by a service member's command—the service members themselves either complete the PQR forms or provide the substantive information included therein.

In November 2002, while serving in the USAR, the Calendar Year (CY) 2002 Reserve Components Selection Board (RCSB) recommended Mr. Okuda for promotion to Captain (O-3). *See id.* at 41, 99. However, before the results of the CY 2002 RCSB were approved by the President on March 17, 2003, Mr. Okuda was ordered to active duty effective February 12, 2003, where he entered as a First Lieutenant (O-2). *Id.* Consequently, pursuant to Army Regulation 135-155 ¶ 4-1(c), he was automatically removed from the Reserve Active Status List (RASL) and the CY 2002 RCSB promotion list. *Id.* at 41, 99; *see* Army Reg. 135-155 ¶ 4-1(c) (2001) ("An officer who is on a promotion list and is removed from the RASL before the effective date of promotion will not be promoted.").

## II.   ABCMR Applications

On May 31, 2004, Mr. Okuda submitted three applications to the Army Board for Correction of Military Records (ABCMR or Board). AR 1–3. Mr. Okuda's first application requested that his First Lieutenant (O-2) date-of-rank be adjusted to May 10, 1998 (from February 9, 1999), citing his two years "TIG" (time in grade) as a Second Lieutenant (O-1) and his May 1998 completion of the MP Officer Basic Course. *Id.* at 1. Mr. Okuda's second application requested a Unit Vacancy Promotion to the rank of Captain (O-3) for allegedly filling an Operations Officer position starting in July 2001, while serving in the USAR. *Id.* at 2. His third application requested promotion to the rank of Captain effective February 9, 2004, citing the CY 2002 RCSB's recommendation and the fact that he "surpassed both active and reserve TIG." *Id.* at 3.

On February 1, 2005, the ABCMR granted partial relief. *Id.* at 39–44. Specifically, the Board concluded that Mr. Okuda was entitled to a May 9, 1998 adjusted date-of-rank and effective date to First Lieutenant (O-2) as well as the resulting constructive service back pay and allowances. *Id.* at 43–44. The ABCMR otherwise denied Mr. Okuda's applications for relief. *Id.* In addressing Mr. Okuda's requests for retroactive promotions to Captain (O-3), the Board explained:

3

> [T]he applicant has submitted no evidence to show that it was the intent of his chain of command to submit his name for promotion to captain by a [Position Vacancy Board (PVB)] or promote him to captain in the position he was occupying. The applicant has not provided sufficient information to show that because the position he was assigned to was a captain's position and since this was the only other position available that he was eligible for consideration and/or promotion to captain by a PVB.

*Id.* at 43. Addressing Mr. Okuda's selection for promotion to Captain (O-3) by the CY 2002 RCSB, the ABCMR confirmed that Mr. Okuda's call to active duty prior to the formal approval of his promotion rendered him ineligible for promotion to Captain until he completed a year of active duty service and was duly selected for promotion by an active duty Captain Promotion Board. *Id.* at 43–44. The recommendation to correct Mr. Okuda's First Lieutenant date-of-rank and effective date was approved by the Deputy Assistant Secretary (Army Review Board) for Manpower and Reserve Affairs on February 14, 2005. *Id.* at 45. Two days later, on February 16, 2005, Mr. Okuda was considered and selected for promotion to Captain by the Fiscal Year (FY) 2005 Captain Promotion Board, with an effective date of March 1, 2005. *Id.* at 49, 126.

On October 13, 2006, Mr. Okuda submitted a fourth ABCMR application "request[ing] a date of rank adjustment to May 2003 for [his] current rank of Captain." *Id.* at 47. In support of his application, Mr. Okuda explained that the recent adjustment to his First Lieutenant date-of-rank (i.e., May 9, 1998) made him eligible for retroactive consideration by the CY 2001 RCSB and, if selected, would have entitled him to enter upon active duty in February 2003 as a Captain (O-3).[3] *Id.* The CY 2001 RCSB, which convened from November 13 to December 14, 2001, considered for "in the zone" promotion to Captain all First Lieutenants with a date-of-rank between May 17, 1997, and May 31, 1998. *Id.* on 1157, 1159.

During the Board's review, the ABCMR discovered that its previous recommendation to correct Mr. Okuda's First Lieutenant date-of-rank to May 9, 1998, was never implemented despite being approved on February 14, 2005. *Id.* at 99. On April 5, 2007, the ABCMR again granted partial relief. *Id.* at 110–19. Specifically, the Board reiterated its prior recommendation that Mr. Okuda's First Lieutenant date-of-rank be adjusted to May 9, 1998. *Id.* at 116–17. The Board further recommended that the U.S. Army Human Resources Command (HRC), consider the corrected date-of-rank in reviewing Mr. Okuda's military personnel records to determine whether Mr. Okuda was entitled to an adjustment

---

[3] The requested May 2003 date-of rank reflected Mr. Okuda's five-years-in-grade as a First Lieutenant.

4

of his Captain date-of-rank and effective date. *Id.* at 118. The ABCMR otherwise denied relief. *Id.* On April 18, 2007, Gerard W. Schwartz, Acting Director, ABCMR, approved the ABCMR's recommendations. *Id.* 120.

On May 3, 2007, the HRC amended Mr. Okuda's First Lieutenant date-of-rank to May 9, 1998 (from February 9, 1999). *Id.* at 125. The HRC then considered whether the correction impacted Mr. Okuda's Captain date-of-rank (i.e., March 1, 2005). *Id.* at 126. In a memorandum dated May 4, 2007, Major Thomas C. Ritchie, Chief, Promotions Branch, concluded that Mr. Okuda was *ineligible* to be considered by the FY 2004 Captain Promotion Board because he had not yet served on active duty for one year as of the date that board convened. *Id.* Major Ritchie further explained that although Mr. Okuda's corrected First Lieutenant date-of-rank would have given him an earlier sequence number (i.e., date-of-rank seniority) for the FY 2005 Captain Promotion Board, it would not have made him eligible to be considered by the FY 2004 Captain Promotion Board or otherwise entitle him to an earlier date-of-rank. *Id.*

On July 17, 2007, Mr. Okuda submitted a fifth application to the ABCMR "request[ing] . . . reconsideration for a Date of Rank adjustment to Captain." *Id.* at 123. In support of his request for reconsideration, Mr. Okuda repeated his claim that his corrected First Lieutenant date-of-rank entitled him to be retroactively considered for promotion to Captain by the CY 2001 RCSB and, if selected, he would have entered upon active duty in February 2003 as a Captain. *Id.* In support of his claim that the FY 2001 RCSB would have selected him for promotion, Mr. Okuda attached to his application a June 4, 2007 memorandum purportedly signed "for" Mr. Okuda's (then-current) Commanding Officer, Colonel Randy A. Hart.[4] *Id.* at 124. The memorandum asserts that Mr. Okuda's July 16, 2001 to July 15, 2002 OER "incorrect[ly]" lists Mr. Okuda's duty position title as "Platoon Leader" instead of "Operations Officer," and that Mr. Okuda in fact served in the higher level (Captain (O-3)) position. *Id.* (referencing *id.* at 269–70). Upon this premise, the memorandum declares that Mr. Okuda would have been promoted to Captain by the CY 2001 RCSB Promotion Board. *Id.* at 124.

Among the questions raised by the June 4, 2007 memorandum is the representation that "A copy of the corrected evaluation report *is attached* and this has been resubmitted to HRC . . . on 4 June 2007." *Id.* (emphasis added). No such corrected OER is included in the 1,168-page administrative record filed in this case and the United States represents to the Court: "The Army has not located a copy of the alleged 'corrected evaluation report.'" *See generally* ECF 15 & 15-1–15-5 (administrative record); *see* ECF 16 at 18 n.7 (government representation).

---

[4] Colonel Hart does not appear on Mr. Okuda's OERs during the relevant rating periods (i.e., July 16, 2001 to July 15, 2002, July 16, 2002 to February 9, 2003). *See id.* at 269–70, 278–79.

>The ABCMR made a similar observation:
>
>Although you indicated that your Officer Evaluation Report (OER) for the period 16 July 2001 – 15 July 2002 was corrected to show your duty position of "Operations Officer," you failed to provide a copy of the corrected OER and one could not be obtained through the interactive Personnel Electronic Records Management System (iPerms) website for review.

AR 166.  The United States further represents: "We also do not know who signed this June 4, 2007 memorandum, or whether that person would have authority to 'correct' the OER signed by rater Lt. Col. Stephen Mortimer and senior rater Col. James Nishimoto on August 2, 2002."  ECF 16 at 18 n.7 (citing AR 269).  Despite the Court's inquiries, the June 29, 2022 status conference and the parties' representations left these discrepancies unresolved.

On December 6, 2007, the ABCMR returned Mr. Okuda's request for reconsideration without action, explaining that he "did not provide new evidence and/or argument with this request." AR 166–67.  As quoted above, the ABCMR noted that Mr. Okuda failed to provide a copy of the purported corrected OER referenced in the June 4, 2007 memorandum, and that the Board could not locate a copy in iPerms.  *Id.* at 166.  The ABCMR further explained that, in any event, "simply changing the duty position on the OER[] would not necessar[ily] . . . indicat[e] that you held a captain position without the narrative entries to support your contentions."  *Id.*  To this end, the Board highlighted the rating official's narrative included in Mr. Okuda's July 16, 2001 to July 15, 2002 OER.  *Id.*; *see id.* at 269 (repeated references to Mr. Okuda's performance as a "Platoon Leader" and "his platoon" by his rater and senior rater).

Thereafter, on September 23, 2008, a Special Selection Board (SSB) convened to consider whether Mr. Okuda would have been selected for promotion to Captain (O-3) by the CY 2001 RCSB in light of his corrected First Lieutenant date-of-rank.  *See id.* at 1141.  The SSB recommended Mr. Okuda for promotion and, accordingly, Mr. Okuda was notified on February 19, 2009, that his Captain date-of-rank would be adjusted from March 1, 2005, to May 8, 2003.  *Id.*  HRC further advised Mr. Okuda: "If you are in a higher grade position and meet all qualifications you can receive an earlier date of rank but not earlier than the Secretary of Defense approval date of the criteria year recommended under 1 March 2002."  *Id.* (emphasis in original).  Inexplicably, the HRC then amended Mr. Okuda's Captain

6

date-of-rank and effective date from March 1, 2005, to *March 1*, 2003.[5]  *Id.* at 1142.  Following the two-year adjustment to his Captain date-of-rank, on August 18, 2010, Mr. Okuda was retroactively promoted to Major (O-4), with a date-of-rank and effective date of September 2, 2009.  *Id.* at 1144.

On April 9, 2013, Mr. Okuda requested that HRC again adjust his Captain date-of-rank, this time from March 1, 2003, to March 1, 2002.  *Id.* at 1115–17.  In support of his request for the additional year of constructive service, Mr. Okuda again asserted that he filled a Captain (O-3) position (i.e., Operations Officer)–as opposed to a First Lieutenant (O-2) position (i.e., Platoon Leader)–starting on July 16, 2001.  *Id.* at 1116.  Ignoring the references to Platoon Leader in his July 16, 2001 to July 15, 2002 OER—and making no mention of his previously claimed corrected OER for this rating period—Mr. Okuda instead cited his DA Form 2B and DA Form 2-1, which list his position as "Operations Officer" with an assignment date of July 16, 2001, and an effective date of July 17, 2001, respectively.  *Id.* at 1116-17, 127–28, 132.

On June 17, 2013, after researching Mr. Okuda's military personnel files, *see id.* at 1118–19, John K. Dahlhauser, HRC Officer Promotions Branch, denied Mr. Okuda's request for an additional year of constructive service as a Captain.  *Id.* at 1146.  In denying Mr. Okuda's request, Mr. Dahlhauser cited: the untimeliness of Mr. Okuda's request (i.e., four-year-old request when the allotted time to respond to a notice of promotion consideration is generally 90 days but in no event longer than a year); the inability to determine whether Mr. Okuda in fact served in an Operations Officer role and, even if so, whether he was the sole occupant of that position; and the ABCMR's December 6, 2007 conclusion that the Board could not verify that Mr. Okuda actually served as an Operations Officer during the relevant period.  *Id.*

### III. Officer Separation Board

On December 6, 2013, the Army announced the convening of FY 2014 Officer Separation Boards (OSB) and (Enhanced) Selective Early Retirement Boards (E-SERB) for the rank of Major.  *Id.* at 1147–52.  Relevant here, eligible officers included Majors with a date-of-rank between and including October 2, 2008 and April 29, 2013, and

---

[5] There is nothing in the administrative record explaining, and the United States represented that it is unaware of, the reason for the additional two-month adjustment from May 8, 2003, to March 1, 2003.  *Compare* AR 1141 (notice new Captain date-of-rank will be May 8, 2003) *with id.* at 1142 (amended Captain date-of-rank is March 1, 2003); s*ee* EFC 16 at 19 n.10 (government representation).

> who have served at least one year active duty in the grade currently
> held as of the convene date of their Board, and who will have less
> than 18 years of active federal service as of the convene date of
> their Board . . . if they are not on a list of officers recommended for
> promotion to the next higher grade.

*Id.* at 1147 (alternation to capitalization). Mr. Okuda's August 18, 2010 promotion to Major with a retroactive date-of-rank of September 2, 2009, made him eligible for the FY 2014 Major OSB and a member of Year Group (YG) 2000. *Compare id.* at 1144 with *id.* at 1147–48. The FY 2014 Major OSB, which convened from April 22 to May 14, 2014, selected Mr. Okuda for involuntary separation. *Id.* at 460, 1148. Effective May 1, 2015, Mr. Okuda was Honorably discharged from the Army. *Id.* at 435–36, 461–62.

### IV.  Current Claims

Mr. Okuda challenges the decisions of the ABCMR and HRC not to award him a further adjusted Captain date-of-rank and effective date retroactive to March 1, 2002 (instead of March 1, 2003). Upon this premise, Mr. Okuda claims that a March 1, 2002 Captain date-of-rank would have made him eligible for consideration for promotion to Major by the FY 2007 Major Promotion Board. If selected for promotion, the hypothetical argument commences, Mr. Okuda would have a February 1, 2008 Major date-of-rank (instead of September 2, 2009). The February 1, 2008 Major date-of-rank, the argument concludes, would have rendered Mr. Okuda *ineligible* to be considered for involuntary separation by the FY 2014 Major OSB since the eligibility window began on October 2, 2008. Mr. Okuda proffers two supplements to the administrative record in support of his assertions.

In addition to invalidating the ABCMR and HRC decisions not to further adjust his Captain date-of-rank and effective date retroactive to March 1, 2002, Mr. Okuda seeks an order of this Court directing the Army to: correct Mr. Okuda's Captain date-of-rank and effective date retroactive to March 1, 2002; and convene an SSB to consider whether Mr. Okuda should have been promoted to Major by the FY 2007 Major Promotion Board and, if selected, adjust his Major date-of-rank and effective date retroactive to February 1, 2008. If the SSB convened recommends Mr. Okuda for promotion to Major, and his Major date-of-rank and effective date are consequently adjusted to February 1, 2008, Mr. Okuda further seeks an order of this Court directing the Army to deem Mr. Okuda to have been ineligible to be considered for involuntary separation by the FY 2014 Major OSB. Whatever the ultimate findings on remand, Mr. Okuda seeks constructive service and consequent back pay and allowances for any further adjustments to his dates-of-rank and effective dates, potential reinstatement, and attorney's fees and costs. ECF 28 at 23–24; *see also* ECF 1 at 9 (complaint sought additional relief in the form of additional retroactive promotions).

# DISCUSSION

## I. Motion to Supplement the Administrative Record

To support his claim that he filled a Captain (O-3) position (i.e., Operations Officer)–as opposed to a First Lieutenant (O-2) position (i.e., Platoon Leader)–starting on or about July 16, 2001, Mr. Okuda proffers the following supplemental evidence: Request for Reserve Component Assignment or Attachment, DA Form 4651-R (June 19, 2001); and a Freedom of Information Act (FOIA) request (undated) submitted by Mr. Okuda and the HRC's response (Aug. 4, 2017).[6] ECF 25-1; ECF 25-2.[7] During the pendency of Mr. Okuda's ABCMR applications and HRC request, Mr. Okuda did not provide the ABCMR with the DA Form 4651-R and HRC's FOIA response did not exist.[8] Accordingly, Mr. Okuda's motion is properly captioned and considered a motion to *supplement*—as opposed to *complete*—the administrative record. *See Smith v. United States*, 114 Fed. Cl. 691, 695–97 (2014) (discussing differences between supplementing and completing the administrative record and the respective legal standard).

### A. Legal Standard

The Supreme Court has long held that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Consequently, "the parties' ability to supplement the administrative record is limited." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009). More specifically, "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)). "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert

---

[6] Notably, the alleged "corrected" OER—which purports to directly address the core issue presented in this case—is not among the documents proffered by Mr. Okuda in support of his motion to supplement the administrative record.

[7] Mr. Okuda initially filed his response to the government's dispositive motion and, concomitantly, sought leave of the Court to supplement the administrative record with the above-referenced documents attached as an appendix. *See* ECF 25. Mr. Okuda was then granted leave to file an amended/corrected brief to include a cross-motion for judgment upon the administrative record. *See* ECF 26–27. In filing his amended brief, although clearly continuing to seek leave of the Court to supplement the administrative record, Mr. Okuda did not reattach the above-referenced documents. *See* ECF 28. For clarity, in deciding the motion to supplement, the Court considered Mr. Okuda's amended brief (ECF 28) and original appendix (ECF 25-1 and 25-2).

[8] Although undated, the Court assumes Mr. Okuda's FOIA request was drafted and submitted to the HRC relatively close in time to the HRC's August 4, 2017 response or, at minimum, after his ABCMR and HRC proceedings concluded.

the "arbitrary and capricious" standard into effectively de novo review."' *Id.* (citation omitted). This legal standard applies to judicial review of decisions made by military corrections boards. *Walls v. United States*, 582 F.3d 1358, 1367–68 (Fed. Cir. 2009).

"In military pay cases before this court, an alternative to supplementation of the administrative record is to remand the case to the corrections board whose decision is being reviewed, so that the board may render a decision on a complete record." *Miller v. United States*, 119 Fed. Cl. 717, 727 (2015) (citing cases). Indeed, a court may, only in exceedingly rare circumstances, consider in the first instance evidence not presented to the corrections board; such evidence may be new or newly discovered or material the military pay claimant failed or elected not to submit as part of their application for administrative relief. *See Walls*, 582 F.3d at 1367 ("If the record is inadequate, '[t]he reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry,' and instead 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'") (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Barnick v. United States*, 591 F.3d 1372, 1382 (Fed. Cir. 2010) ("[W]here evidence could have been submitted to a corrections board and was not, the evidence is properly excluded by the Court of Federal Claims.") (citing *Walls*, 582 F.3d at 1358)). A notable exception to the general rule—not applicable here—is "where bad faith or bias is alleged to have tainted the proceedings under review." *Miller*, 119 Fed. Cl. at 727.

In any event, to merit judicial consideration of supplemental material or a remand to the military corrections board for further administrative proceedings, the proffered supplement to the administrative record must be probative. *Miller*, 119 Fed. Cl. at 727. "Probative evidence" is defined as "[e]vidence that tends to prove or disprove a point in issue." *Probative Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019). For the reasons set forth below, the Court finds that the tendered documents lack probative value and that their omission does not preclude effective judicial review or otherwise warrant a remand.

### B. Proffered Supplemental Evidence

#### 1. DA Form 4651-R[9]

The proffered DA Form 4651-R dated June 19, 2001—titled "*Request* for Reserve Component Assignment or Attachment"—predates Mr. Okuda's July 16,

---

[9] During the June 29, 2022 status conference, the government represented to the Court that, similar to the alleged corrected OER, the United States has not been able to independently verify the existence or accuracy of the proffered DA Form 4651-R.

10

2001 transfer from the Army National Guard to the USAR.  *Compare* ECF 25-1 (emphasis added) *with* AR  72–73, 107.  Consequently, the document speaks to future expectations rather than actual performance.  Nevertheless, consistent with Mr. Okuda's July 16, 2001 to July 15, 2002 OER, the DA Form 4651-R lists Mr. Okuda's "Grade" as "O[-]2" (Box 3d) and "MP PLATOON LDR" as his "Position Title" (Box 5g).  *Compare* ECF 25-1 *with* AR 269–70.

Mr. Okuda instead relies upon the information listed in Box 5d ("TOE/TD"), Box 5e ("PARA"), 5f ("Line"), and 5i ("Grade Authorized").  Boxes 5d–5f and Box 5i are cross-references to the above-cited Table of Organization and Equipment (TOE) and the information listed, more specifically, refers to the Operations Officer (O-3) position authorized within the 1101st USAR GSU, PM Section.  *Compare* ECF 25-1 *with* AR 135.  At best, the DA Form 4651-R contains an inconsistency between the Position Title (i.e., Platoon Leader (O-2)) and the Grade Authorized (as handwritten therein, O-3).[10]  This identical issue was presented to the ABCMR and the HRC in Mr. Okuda's OERs for the rating periods July 16, 2001 to July 15, 2002, and July 16, 2002 to February 9, 2003, and his DA Form 2B and DA Form 2-1.  *Compare* AR 269–79, 278–79 (OERs) *with id.* at 127–28, 132 (DA Forms).  The Board and the HRC credited the detailed descriptions authored by Mr. Okuda's rater and senior rater in his OERs and determined that Mr. Okuda had not demonstrated that he, in fact, filled the higher-level position of Operations Officer (O-3) or, even if he did, he did not do so alone.  The Court finds that the proffered DA Form 4651-R is cumulative rather than probative and, thus, its omission does not frustrate judicial review or warrant a remand for consideration by the ABCMR.

### 2. FOIA Request and Response

The HRC's August 4, 2017 response to Mr. Okuda's undated FOIA request is similarly unavailing.  In his FOIA request, Mr. Okuda requested information about another service member and, more specifically, their assignment to and position within the 1101st USAR GSU between July 16, 2001 through February 11, 2003.  *See* ECF 25-2 at 1.  The HRC's response simply confirms that the identified service member "was assigned to the 1101st [USAR] GSU from 16 July 2001 thru 11 February 2003."  *Id.* at 2.  The sole reference to the identified service member's position in the FOIA response is in purportedly restating Mr. Okuda's FOIA request: "This is in response to your [FOIA] request for documents specifying that [identified service member] was assigned as the MP Platoon Leader in the 1101st [USAR GSU] from 16 July 2001 thru February 2003."  *Id.*  Notably, Mr. Okuda's

---

[10] The Court finds the handwritten "O-3" in Box 5i (Grade Authorized) puzzling; it is the only handwritten datapoint in the proffered document (other than dates accompanying signatures) and does not appear to match any signatory's date.  And as noted above, the United States represented to the Court that this document does not currently exist in its official records.  During the June 29, 2022 status conference, although theories were proffered, no firm conclusion was reached.

11

FOIA request does not specify what position he understands that the identified service member held during the relevant period, suggesting that the HRC was confirming that they served in the referenced position of MP Platoon Leader in addition to their dates of service. *Compare id.* at 1 *with id.* at 2.

Putting aside the ambiguity in the HRC's response regarding the identified service member's position, the proffered documents do not evidence Mr. Okuda (alone) occupied a Captain's position when assigned to the 1101st USAR GSU beginning on or about July 16, 2001. At most, the FOIA correspondence suggests that another service member *may* have served as *an* MP Platoon Leader in the 1101st USAR GSU at some point between July 16, 2001 and February 12, 2003. Based upon that supposition, Mr. Okuda avers that the identified service member served as the *sole* MP Platoon Leader (O-2),[11] leaving only the Operations Officer (O-3) position for Mr. Okuda to fill and, further, that Mr. Okuda served as the *sole* occupant of the Operations Officer position.

As noted *supra*, the TOE for the 1101st USAR GSU lends some support for Mr. Okuda's contention that there were only three *authorized* commissioned officer positions—i.e., Provost Marshal (O-4), Operations Officer (O-3), and MP Platoon Leader (O-2)—and 26 authorized enlisted personnel positions available within the PM Section and Law Enforcement Platoon. AR 135. If that was the case, and another service member occupied the MP Platoon Leader position, presumably the Operations Officer would be the only position available for Mr. Okuda to fill given his relative grade. That said, nothing in the record evidences that the TOE was strictly enforced, remained in effect beyond the "end date" of October 2, 2001, and that the positions authorized aligned with the reality of the personnel and their roles in the field. Indeed, as noted above, in detailing Mr. Okuda's role and responsibilities, his rater and senior rater characterized his position as that of a "Platoon Leader" at all times relevant hereto, regardless of whether Mr. Okuda's "Principal Duty Title" was listed as a "Platoon Leader" (July 16, 2001 to July 15, 2002 OER) or "Operations Officer" (July 16, 2002 to February 9, 2003 OER). *Id.* at 269, 278.

Nor is there any evidence in the record that the purportedly singular Operations Officer (O-3) position was nominally vacant and being filled solely by Mr. Okuda. Any claimed strict adherence to the TOE in the field is belied by the HRC's denial of Mr. Okuda's requests for administrative relief, wherein the HRC explained that it was unable to determine whether Mr. Okuda in fact served in an Operations Officer position and, even if so, *whether he was the sole occupant of that position*. *Id.* at 1146. For these reasons, the Court finds that the omission of the

---

[11] Neither the proffered FOIA correspondence nor the administrative record documents the identified service member's grade or even whether they were a commissioned officer, noncommissioned officer, or enlisted personnel.

12

FOIA exchange from the administrative record does not frustrate judicial review or merit a remand to the ABCMR for further consideration.[12]

## II.   Cross-Motions for Judgment on the Administrative Record

The sole remaining issue properly before the Court is whether the ABCMR's and the HRC's conclusions that Mr. Okuda failed to demonstrate that he served in a higher-grade position (i.e., Operations Officer (O-3)) starting on or about July 16, 2001—a condition precedent to further adjusting his Captain date-of-rank and effective date retroactive to March 1, 2002 (instead of March 1, 2003)—were arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *See Prestonback v. United States*, 965 F.3d 1363, 1368 (Fed. Cir. 2020) (courts will not disturb decisions of military correction boards unless they are arbitrary, capricious, contrary to law, or unsupported by substantial evidence). Indeed, the balance of Mr. Okuda's claims for relief would require such a finding and a consequent remand to the ABCMR under to RCFC 52.2(a) for further proceedings. As discussed below, substantial evidence supports the ABCMR's and HRC's findings, and nothing in the record warrants disturbing them.[13]

### A.   ABCMR Decisions

The ABCMR examined Mr. Okuda's claims that he served in a higher-grade position (i.e., Operations Officer (O-3)) starting on or about July 16, 2001 in connection with his second, fourth, and fifth applications for administrative relief. *See* AR 39–45 (February 1, 2005 ABCMR decision); *id.* 110–20 (April 5, 2007 ABCMR decision); *id.* 166-67 (December 6, 2007 ABCMR decision). In each instance, the Board determined that Mr. Okuda failed to demonstrate that he served as the *sole* Operations Officer (O-3) for the 1101st USAR GSU starting on or about July 16, 2001, to merit a further backdating of his Captain date-of-rank and

---

[12] Mr. Okuda further asserts that the administrative record should be supplemented because the ABCMR and HRC failed to "contact the command to determine what records existed concerning Plaintiff's position and the position of other officers assigned to the unit" and that "[t]he omission of these documents precludes effective judicial review of the agencies' decisions." ECF 28 at 2–3. Put simply, "[t]he ABCMR will decide cases on the evidence of record. It is not an investigative body." 32 C.F.R. § 581.3(c)(2)(iii); *cf. Pedden v. United States*, 145 Fed. Cl. 785, 800-01 (2019) (Board for Correction of Naval Records (BCNR) is not required to find facts or investigate when considering applications). In seeking administrative relief, Mr. Okuda was responsible for presenting the ABCMR with all pertinent records supporting his position.

[13] Because the Court does not reach Mr. Okuda's additional claims for relief, summarized *supra*, conditioned upon an initial finding of ABCMR and HRC error, the Court need not address the myriad claims that defendant maintains are either beyond the Court's jurisdiction or otherwise nonjusticiable. Consequently, the government's motion to dismiss under RCFC 12(b)(1) and 12(b)(6) is summarily denied.

effective date. There is no basis upon the administrative record to overturn these findings.

In the ABCMR's February 1, 2005 decision, quoted *supra*, the Board cited Mr. Okuda's failure to submit any evidence documenting or otherwise demonstrating that his chain of command intended to promote him to Captain either to fill an existing vacancy or in his then-current position during the relevant reporting periods. *Id.* at 43. The Board further explained that Mr. Okuda did not submit sufficient information evidencing that he was, in fact, serving in a Captain's position and that the higher-level position was the only one available. *Id.* After reviewing relevant personnel records, including Mr. Okuda's OERs for the July 16, 2001 to February 9, 2003 rating periods,[14] the ABCMR concluded that Mr. Okuda failed to show that he occupied a Captain's position. *Id.* at 40, 43.

On April 5, 2007, addressing Mr. Okuda's fourth application, the ABCMR found that the evidence in the record failed to support Mr. Okuda's claim that he served in a higher-grade position (i.e., Captain) while in the Reserve. *See generally id.* at 117. In support of its assessment, the Board credited the contemporaneous and detailed narratives included in Mr. Okuda's OERs for the relevant rating periods. *Id.* at 113–14, 117 (referencing *id.* at 269–70, 278–79). The OER for the July 16, 2001 to July 15, 2002 rating period lists "Platoon Leader" as Mr. Okuda's "Principal Duty Title." The OER for the July 16, 2002 to February 9, 2003 rating period, in turn, lists "Operations Officer" as Mr. Okuda's "Principal Duty Title." As emphasized by the Board, despite the different positions listed, the detailed narratives prepared by Mr. Okuda's rater (and senior rater) that describe Mr. Okuda's duties and responsibilities are substantively identical: both OERs (spanning 19 months) describe Mr. Okuda's military service and responsibilities as that of an MP Platoon Leader[15]—a position typically occupied by a First Lieutenant consistent with Mr. Okuda's grade at the time. *Id.* at 114, 117. Based upon these findings, the ABCMR concluded that Mr. Okuda was "not entitled to have his records reviewed by a promotion reconsideration board for CPT." *Id.* at 117.

---

[14] The ABCMR also considered Mr. Okuda's appointment orders, reassignment orders, Service School Academic Evaluation Report and OBC completion certificate, Captain RCSB information, active duty orders, officer record brief, and a letter to the Secretary to the Army. *Id.* at 40.

[15] *See, e.g.*, AR 269 ("Primary responsibility is to lead an MP Platoon . . . "); *id.* at 270 ("As GSU MP Platoon Leader he is quick to take the lead . . ."; "He has played an instrumental role as senior platoon trainer by ensuring that all members of his platoon are properly trained . . . "; "He has been successful in developing the MP platoon NCO's [sic] as leaders . . . "; ". . . taskings assigned to his platoon . . ."; ". . . [he] demonstrates effective administrative knowledge and skills when dealing with a variety of platoon administrative functions . . ."); *id.* at 278 ("Primary responsibility is to lead an MP Platoon . . ."); *id.* at 279 ("1LT Okuda consistently demonstrates a high degree of military and professional excellence in his position as MP platoon leader."; "As a result of his leadership his platoon provides ready and trained MP personnel . . . "; "In addition to his platoon's Garrison augmentation duties . . . "; ". . . his current military assignment as a MP platoon leader.").

The ABCMR also considered Mr. Okuda's seemingly inconsistent PQRs (i.e., DA Form 2B, DA Form 2-1), listing his position title as MP Operations Officer and reflecting an assignment date and effective date, respectively, of July 16 and July 17, 2001. *Id.* at 114 (referencing *id.* at 127–28, 132). Although the Board did not directly address the discrepancy between the OERs and PQRs, the Board's assessment of Mr. Okuda's two OERs is telling. As noted above Mr. Okuda's July 16, 2001 to July 15, 2002 OER and his July 16, 2002 to February 9, 2003 OER list different Principle Duty Titles, and the second OER lists the same Principle Duty Title as Mr. Okuda's PQRs. In crediting and equating the detailed narratives contemporaneously supplied by Mr. Okuda's rater and senior rater within the OERs, the Board adopted the substantive assessments over contrary position titles. Moreover, as noted *supra*, service members themselves complete (and update) their own PQRs or supply the information therein. This renders the accuracy of the PQRs inherently questionable; and, in this matter, the credibility of the information therein is further undermined in view of the other documents proffered by Mr. Okuda.

In denying Mr. Okuda's request for reconsideration on December 6, 2007, the ABCMR more pointedly addressed the disparity between the OER narrative and duty title, explaining: "simply changing the duty position on the OER[] would not necessary[ily] be indicative that you held a captain position without the narrative entries to support your contentions." *Id.* at 166. To this end, the Board noted Mr. Okuda's failure to append, despite his representation, the alleged corrected July 16, 2001 to July 15, 2002 OER. *Id.*

For these reasons, the Court finds that the ABCMR's conclusions are supported by substantial evidence and are not arbitrary, capricious, or contrary to law. In reviewing and weighing the available evidence, the ABCMR determined Mr. Okuda failed to submit sufficient credible evidence that he served in a higher-grade position (i.e., Operations Officer (O-3)) during the relevant rating period to warrant consideration for an earlier Captain date-of-rank and effective date. The existence of seemingly inconsistent references in Mr. Okuda's PQRs does not support a different conclusion. It is not the function of this Court to reweigh the evidence presented to the ABCMR. *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983); *see Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.").

### B. HRC Decision

On April 9, 2013, after the HRC amended Mr. Okuda's Captain date-of-rank and effective date to March 1, 2003 (from March 1, 2005) consistent with the ABCMR's recommendation, Mr. Okuda requested an additional year of constructive service (i.e., Captain date-of-rank and effective date of March 1, 2002). *Id.* at 1115–

15

17. In support of his request, Mr. Okuda continued to press his contention that he was assigned to a higher-grade position in July 2001 (i.e., Operations Officer (O-3)). *Id.* After reviewing Mr. Okuda's PQRs, the HRC initially explained to Mr. Okuda: "your PQR does show that you're [sic] duty position was a CPT, but it does not show if you were the sole occupant of that position . . . . I cannot just promote you because you have a PQR." *Id.* at 1118. After further research, the HRC more formally denied Mr. Okuda's request. *See id.* at 1146. Noting the untimeliness of Mr. Okuda's request for administrative relief, the HRC nonetheless addressed the merits, stating: "There is no way to ascertain your duty position and sole occupancy of that position without the Unit Manning Report (UMR)."[16] *Id.* at 1146. Then, citing the ABCMR's April 5, 2007 decision, the HRC further explained: "ABCMR . . . could not verify your position of 'Operations Officer' based on your previous submission of an OER/PQR." *Id.*

The Court finds that the HRC's decision was supported by substantial evidence and was not arbitrary, capricious, or contrary to law. Like the ABCMR, in weighing evidence in the record, the HRC looked to and credited the contemporaneous, substantive assessments of Mr. Okuda's actual performance (i.e., OERs) over generic duty titles and numeric codes (i.e., PQRs) in assessing whether Mr. Okuda in fact served in a higher-grade position while in the Reserve. The ABCMR and the HRC thoughtfully considered Mr. Okuda's formal applications and additional requests for administrative relief and based their decisions—whether granting or denying relief—upon the weight and credibility of the evidence presented. The Court finds no reason to disturb the decisions of the ABCMR and the HRC concluding that Mr. Okuda failed to demonstrate that he served in a higher-grade position (Operations Officer (O-3)) position while in USAR.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to supplement the administrative record is **DENIED**, defendant's motion to dismiss is **DENIED**, defendant's motion for judgment on the administrative record is **GRANTED**, and plaintiff's cross-motion for judgment on the administrative record is **DENIED**. The Clerk is directed to ENTER judgment accordingly.

---

[16] During the June 29, 2022 status conference, the United States represented to the Court that UMRs are maintained for a period of approximately two years and that, consequently, the relevant UMR for the 1101st USAR GRU likely was not available in June 2013 for consideration by the HRC.

**IT IS SO ORDERED.**

_____
Armando O. Bonilla
Judge